**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

REUBEN AVENT,

                      Plaintiff,

       v.

ROBERTA REARDON, et al.,
                                No. 1:19-CV-1565
                                (GTS/CFH)

                    Defendants.

_____

**APPEARANCES:**                    **OF COUNSEL:**

REUBEN AVENT
2363 Adam Clayton Powell Jr. Blvd.
Apt. 5j
New York, New York 10030
Plaintiff pro se

### REPORT-RECOMMENDATION AND ORDER[1]

     Plaintiff pro se Reuben Avent commenced this action on December 19,

2019, by filing a complaint.  See Dkt. No. 1 ("Compl.").  In lieu of paying this

Court's filing fee, he submitted a motion to proceed in forma pauperis ("IFP").

See Dkt. No. 2.  The undersigned has reviewed plaintiff's IFP application and

determines that he may properly proceed IFP.[2]  Presently pending before the

---

[1]  Reuben Avent is a frequent pro se litigant.  This is the fourth case he has commenced in this District recently.  See, e.g., Avent v. PlatPlatinum Plus Auto Protection, et al., No. 1:19-CV-1494 (BKS/DJS); Avent vs. Progressive Cas. Ins. Co., et al., No. 1:19-CV-830 (LEK/DJS); Avent v. Meilunas, et al., No. 1:19-CV-70 (GLS/DJS).

[2]  Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

undersigned is review of plaintiff's complaint pursuant to 28 U.S.C. §
1915(e)(2)(B).

## I. Initial Review

### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a
plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the
court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails
to state a claim on which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).
Thus, it is a court's responsibility to determine that a plaintiff may properly
maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his
submissions liberally and interpret them to raise the strongest arguments that
they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014)
(per curiam) (internal quotation marks omitted).  However, this does not mean
the Court is required to accept unsupported allegations that are devoid of
sufficient facts or claims.  Although detailed allegations are not required at the
pleading stage, the complaint must still include enough facts to provide the
defendants with notice of the claims against them and the grounds upon which
these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell
Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Ultimately, the plaintiff must

plead "enough facts to state a claim to relief that is plausible on its face."

Twombly, 550 U.S. at 570.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . .
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer

> by number to a paragraph in an earlier pleading. If
> doing so would promote clarity, each claim founded on
> a separate transaction or occurrence – and each
> defense other than a denial – must be stated in a
> separate count or defense.

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of

identification for referring to a particular paragraph in a prior pleading[.]" Flores,

189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint

that fails to comply with the pleading requirements "presents far too a heavy

burden in terms of defendants' duty to shape a comprehensive defense and

provides no meaningful basis for the Court to assess the sufficiency of their

claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the

Second Circuit has held, "[w]hen a complaint does not comply with the

requirement that it be short and plain, the court has the power, on its own

initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42

(2d Cir. 1988) (citations omitted). However, "[d]ismissal . . . is usually reserved

for those cases in which the complaint is so confused, ambiguous, vague, or

otherwise unintelligible that its true substance, if any, is well disguised." Id.

(citations omitted). In such cases of dismissal, particularly when reviewing a pro

se complaint, the court generally affords the plaintiff leave to amend the

complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court

should not dismiss a complaint if the plaintiff has stated "enough facts to state a

claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim

has facial plausibility when the plaintiff pleads factual content that allows the

4

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).

### B. Plaintiff's Complaint[3]

Plaintiff purportedly brings this action pursuant Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1983, and 42 U.S.C. § 1981.  See Compl. at 3.  Plaintiff names as defendants his former employer, Target Corporation ("Target"); Target's CEO, Brian Cornell ("Cornell"); Target's Amsterdam, New York, distribution center managers Jesse and Ryan; an unnamed female Target human resources employee at Target's Amsterdam distribution center ("HR employee"); Target claims representative Douglas Lentes ("Lentes"); New York State Department of Labor ("DOL") Superintendent Roberta Reardon ("Reardon"); and DOL employee Kerri Lee Loveland ("Loveland").  See id. at 1-3, 8 ¶ 23.  Liberally construing plaintiff's complaint to raise the strongest arguments it suggests, as the Court must, see Kirkland, 760 F.3d at 224, plaintiff appears to allege the following: (1) pursuant to Title VII, (a) employment discrimination, and (b) retaliation; (2) pursuant to 42 U.S.C. § 1983, (a) failure to

---

[3] Because of plaintiff's pro se status, the undersigned has considered the allegations in the complaint along with the documents attached thereto.  See, e.g., Anthony v. Murphy, No. 5:15-CV-00450 (DNH/TWD), 2015 WL 1957694, at *1 n.1 (N.D.N.Y. Apr. 28, 2015) ("[I]n light of [the p]laintiff's pro se status, the Court has considered the allegations in, and attachments to, both [the p]laintiff's original and amended/supplemental complaints upon its initial review."), report and recommendation adopted, No. 5:15-CV-450 (DNH/TWD), 2015 WL 3409261 (N.D.N.Y. May 27, 2015).

supervise and train; and (b) conspiracy; and (3) pursuant to 42 U.S.C. § 1981, (a) racial discrimination and (b) hostile work environment.  See generally id.

Plaintiff, an African-American man, alleges that he was employed by defendant Target at a distribution center in Amsterdam, New York, between March and July 2019, where he worked as "an order picker."  Compl. at 4 ¶ 9; see id. 5 ¶ 9.  Plaintiff is from the New York City area, but was required by the terms of his parole to live in upstate New York.  Id. at 23.  Plaintiff states that the Target distribution center in Amsterdam endorsed a policy of racial animus against black employees, including requiring plaintiff to "do not only his job but also the work of other white employees while they received promotions" and he did not, and that plaintiff was targeted by white employees who stole his lunch and put "scratches and small dents" in his car after he was forced to keep his lunch in his car.  Id. at 3 ¶ 4.  Plaintiff contends that he complained to managers Jesse and Ryan about his lunch being stolen, but that they did not take any action to remedy the situation.  See id. at 4 ¶ 5.  He states that the Amsterdam distribution center was "so large that no white employees stayed in warehouse [sic] as an order picker no more [sic] than 45 days.  However, [plaintiff] and [o]ne Spanish guy had been there since employed."  Id. at ¶ 9.  Plaintiff explains that he "was an [o]rder [p]icker from March[] 5[,] 2019 to and through July 16, 2019 and the Spanish guy had been an Order picker for a year."  Id. at 5 ¶ 9.  In early June, plaintiff "filed an filed an in[-]house complaint with Target Corporate office [sic] on the facility computer."  Id. at ¶ 10; see id. at 27.  In his in-house

complaint, plaintiff stated that, because of his race, he had been passed up for promotions, given more and harder work than white employees, and that his lunch had been stolen as evidenced by the fact that "other employees who are [w]hite did not have their lunch stolen." Id. at 27.

"On June 18[,] 2019[,] or so, [plaintiff] went to human relations saying he was scheduled to move back to New York [City] on July 5[], 2019," and requested a transfer to a distribution center closer to the New York City area. Compl. at 5 ¶ 13.[4]  Plaintiff states that, when he met with the unnamed HR employee at Target, "she . . . put in the paperwork to have [him] transferred and called the [d]istribution [o]ffice which stated that they would accept [plaintiff] only on an agreement that [he] would be able to work the . . . week" after "moving to New York City." Id.  The unnamed HR employee instructed plaintiff to inform his manager of his request so that he could be replaced. See id.  When plaintiff informed his manager, Ryan, that he had met with HR and placed a transfer request, Ryan "became irate" and told plaintiff that the transfer request must be rescinded. Id. 6 ¶ 14.  Manager Jesse "intervene[d]" and "advise[d] [Ryan that] he could not tell" plaintiff to go back to HR and rescind the transfer request, although Jesse was "also in disagreement with [plaintiff's] transfer decision." Id.  Plaintiff also stated that "Jesse did not object and tried to get Ryan not to treat [him] poorly." Id. at 28.  Jesse approved a two-week non-scheduled leave of

---

[4]  The Parole Department apparently lifted the restriction requiring plaintiff to live in upstate New York. See Compl. at 23.

absence for plaintiff from July 8 to July 21, 2019. <u>See id.</u> ¶ 14.[5]  After working on

July 3, 2019, "or so," plaintiff still had not received written approval from HR

regarding his transfer but moved to New York City on July 5, 2019.  <u>See id.</u> at ¶

15.[6]  Plaintiff called Target on July 23, 2019, to inquire about his requested

transfer to a New Jersey distribution center and was told that they "would

investigate such but knew nothing." <u>Id.</u> at ¶ 16.  However, in August 2019,

plaintiff received a termination letter from Target dated July 16, 2019, which had

initially been sent to his upstate address.  <u>See</u> <u>id.</u> at 7 ¶ 18, 28.  According to

plaintiff, he was terminated for failing to attend work on days that he was "not . . .

scheduled to work, and on his day off." <u>Id.</u> at ¶ 18.  Plaintiff applied for

unemployment benefits sometime before receiving his termination letter.  <u>See id.</u>

at 17 ("[Plaintif] . . . did not receive Target's termination letter but did receive two

paychecks for his two week NS period, stating 0 hours, 0 pay. . . . [and] filed for

unemployment benefits . . . stating that he was unsure what his status was but he

was actually laid off due to the lack of work.").

    Plaintiff received a phone call from Loveland, who "attempt[ed] to bribe him

in order to keep receiving unemployment benefits" and telling him to "say [that]

he voluntarily quit his Target employment[.]"  Compl. at 7 ¶ 20.  Loveland then

---

[5]  In his EEOC complaint, plaintiff alleged that manager Jesse approved a non-scheduled two-week leave
of absence from July 9 through July 19, 2019.  <u>See</u> Compl. at 28.

[6]  Plaintiff submitted a copy of his work schedule from June and July 2019, which indicates that he last
worked on July 2, 2019, and that he was absent from work on July 5 through July 16, 2019, and was
listed as "Absen[t]-No Call No Show" on July 9, 10, 11, and 12, 2019.  Compl. at 20.

filed charges against plaintiff with the DOL, alleging that plaintiff fraudulently and unlawfully received unemployment benefits.  See id.  A DOL Administrative Law Judge ("ALJ") issued an initial determination disqualifying plaintiff from receiving unemployment benefits effective July 6, 2019; finding that he lost his employment due to misconduct; charging him with overpayment of benefits in the amount of $1,464.75 and with a civil penalty of $219.71; and reducing his right to receive benefits by 8 days on the ground that plaintiff made a willful misrepresentation to receive benefits.  See id. at 23.  Plaintiff administratively appealed the ALJ's decision.  See id. at ¶ 22.

On October 30, 2019, plaintiff filed a complaint against Target with the Equal Employment Opportunity Commission ("EEOC") advancing the same allegations he asserted in the in-house complaint he filed with Target, and further contending that "Target unlawfully used the unemployment process through the [u]nemployment official, who continued to ask [him] to say that he voluntarily left Target" in order to "extort [plaintiff] from pursing [his] earlier discrimination claim, so that [he] would continue to receive unemployment benefits."  Id. at 28.  On October 31, 2019, following a hearing, the DOL Unemployment Insurance Appeals Board issued a decision modifying the DOL ALJ's initial determination by finding that "the credible evidence establish[ed] that [Target] discharged [plaintiff] for not show [sic] for his shifts"; plaintiff did not know why he was terminated when he applied for unemployment benefits because he had not yet received the termination letter and, therefore, plaintiff did not make a willful

misrepresentation; plaintiff was not overpaid $1,464.75 and that no penalty should be imposed. Id. at 25. On November 29, 2019, plaintiff received a right-to-sue letter from the EEOC. See id. at 29-30.

## C. Analysis[7]

### 1. Eleventh Amendment Immunity

The Eleventh Amendment protects states against suits brought in federal court. See Alabama v. Pugh, 438 U.S. 781, 782 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state. See Woods v. Rondout Valley Cent. School Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006). The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 167-68 (1985). Here, although the complaint provides no clarification on this point, insofar as the complaint may be read as asserting claims for money damages against Reardon and Loveland in their official capacities as employees of the DOL, it is recommended that plaintiff's claims against those defendants in their official capacities be dismissed with prejudice as barred by the Eleventh Amendment.

---

[7] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

## 2. Title VII Claims Against Individual Defendants

To the extent plaintiff names Target CEO Cornell, Target managers Ryan and Jesse, the unnamed Target HR employee, and/or Lentes as defendants in his Title VII claims, such claims must be dismissed because "individuals are not subject to liability under Title VII." Patterson v. Cty. of Oneida, New York, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation marks and citation omitted); see Mandell v. Cty. of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) ("the district court's dismissal of [the] plaintiff's Title VII claims against [the defendant] in his personal capacity must be affirmed because under Title VII individual supervisors are not subject to liability."). Insofar as plaintiff may seek to assert a Title VII employment discrimination or retaliation claim against the New York State Department of Labor ("DOL"), his claim must be dismissed with prejudice, as he was never an employee of the DOL. See Rodriguez v. Boursiquot, No. 9-CV-0802 (PAC/KNF), 2010 WL 985187, at *3 (S.D.N.Y. Mar. 17, 2010) ("Since Rodriguez was never employed by the DOE, there can be no Title VII employment discrimination claim and Rodriguez's Title VII retaliation claim also fails."); Tenny v. Essex County/Horace NYU Home, No. 1:05-CV-0506 (GLS/DHR), 2006 WL 126766, at *3 (N.D.N.Y. Jan.17, 2006) (dismissing both Title VII discrimination and retaliation claims because the plaintiff was never employed by the defendant). Thus, it is recommended that plaintiff's Title VII claims for employment discrimination and retaliation, insofar as asserted against

the individual defendants, be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### 3. Title VII Employment Discrimination Claim Asserted Against Target

To state a prima facie case of discrimination under Title VII, a complaint must allege that (1) the plaintiff belongs to a protected class; (2) he or she is qualified for the position at issue; (3) his or her employment was terminated, or she suffered some other form of adverse action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  See Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).  Plaintiff alleges that he was passed up for promotions, made to do worse and additional work, and refused a valid transfer request based on his race.  See Compl. at 4-5 ¶¶ 9-10, 6 ¶¶ 14-16.  The undersigned finds that plaintiff has sufficiently alleged a Title VII employment discrimination claim insofar as asserted against Target.  Therefore, it is recommended that plaintiff's Title VII employment discrimination claim against Target proceed.

### 4. Title VII Retaliation Claim Asserted Against Target

In order to plead a cognizable claim of retaliation, plaintiff must advance non-conclusory allegations that (1) he engaged in protected activity; (2) the defendants were aware of the activity; (3) the defendants took adverse action against the plaintiff; and (4) there is a causal connection with the protected

activity and the adverse action.  Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 25 (2d Cir. 2014).  Here, afforded a liberal construction, the complaint alleges that plaintiff was refused a transfer request and terminated in retaliation for filing an in-house complaint concerning purported disparate treatment based on his race.  See Compl. at 5 ¶ 10, 7 ¶ 18, 27.  The undersigned finds that plaintiff has plausibly alleged a Title VII retaliation claim against Target. Therefore, it is recommended that this claim proceed.

### 5. Section 1983 Conspiracy

"To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act."  Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992).  Put differently, a private actor acts under color of state law when the private actor "is a willful participant in joint activity with the State or its agents."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (quoting United States v. Price, 383 U.S. 787, 794 (1966)).  "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."  Ciambriello v. Cty. of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (citing Spear, 954 F.2d at 68).

Throughout his complaint, plaintiff alleges that unspecified Target employees conspired with Loveland in order to have fraud charges brought against him on the basis that he illegally collected unemployment benefits

because he voluntarily quit his job. See Compl. at ¶¶ 19-23. Insofar as plaintiff suggests that Cornell—the CEO of Target—personally "concealed and filed material misrepresenting statements to a state office to wrongly cause [his] injuries," his claim is wholly conclusory and unsupported by any facts. Id. at 3. He also suggests, vaguely, that Reardon knew of, but failed to remedy, this purported conspiracy, which was part of a policy, practice, or custom of DOL. See id. at 9 ¶ 23. Plaintiff offers no factual support for his claims and, instead, conclusorily contends that "[o]n reasonable evidence and belief, [a]ll Target [d]efendants" were involved in the purported conspiracy with DOL because they wanted to retaliated against plaintiff for filing his EEOC complaint. Id. at ¶ 19. The complaint fails to specify any particular Target defendants allegedly involved in the purported conspiracy or any facts as to the time or place any of these defendants purportedly conspired with each other. These conclusory allegations do not support a "meeting of the minds" or a plausible conspiracy claim involving any of the defendants. Accordingly, it is recommended that plaintiff's conspiracy claim be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### 6. Section 1983 Failure to Supervise and/or Train

Liberally construed, the complaint attempts to assert a section 1983 claim for failure to supervise and/or train against Target, Cornell, and Reardon. See Compl. at 1-2. A claim for relief under § 1983 must allege facts showing that the

defendant acted under color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983.  Private parties are not liable under § 1983 unless they act under color of state law.  See Hooda v. Brookhaven Nat. Lab., 659 F. Supp. 2d 382, 392 (E.D.N.Y. 2009).  "For the conduct of a private entity to be fairly attributable to the state, there must be such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  Crawley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 111 (2d Cir. 2003) (internal quotation marks and citation omitted).  A private defendant may be held liable as "'a willful participant in joint activity with the State or its agents.'"  Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (quoting United States v. Price, 383 U.S. 787, 794 (1966)).  Alternatively, claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law . . . collaborated or conspired with a private person . . . to deprive the plaintiff of a constitutional right."  Fries v. Barnes, 618 F.2d 988, 990 (2d Cir. 1980) (citation omitted).

Plaintiff has not alleged that Target acted under color of state law and makes only conclusory assertions at the outset of the complaint that Target failed to train and/or supervise its employees without advancing any particular facts or arguments in this regard.  See Compl. at 2.  Such allegations against a private company are insufficient to establish a cause of action for supervisory liability under Section 1983.  See Siji Yu v. Knighted, LLC, No. 15-CV-9340 (KMK), 2018 WL 369191, at *5 (S.D.N.Y. Jan. 9, 2018) (dismissing the plaintiff's Section 1983

supervisory liability claim and holding that, although the plaintiff conclusorily alleged a basis for supervisory liability against his former employer, "the d]efendant [wa]s a private company, not an individual[, a]nd, in any event, proof of supervisory liability is irrelevant for [Section] 1983 purposes if [the d]efendant is not also alleged to have acted under color of state law."), dismissed, No. 18-351, 2018 WL 2143418 (2d Cir. Apr. 25, 2018).  Further, aside from his conclusory statement that Cornell failed to supervise and/or train Target employees, he offers no factual support for his statement and does not develop any argument in furtherance of this contention.  See Compl. at 2.  Thus, plaintiff has failed to plead Cornell's personal involvement, which is fatal to his Section 1983 failure to supervise and/or train claim asserted against Cornell even assuming plaintiff had sufficiently pleaded that Cornell was somehow acting under color of state law.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citations omitted)).  In addition, as discussed in subsection I.5., supra, plaintiff has failed to plausibly assert a Section 1983 conspiracy claim and, therefore, cannot establish a supervisory liability claim against Target and/or Cornell based thereon as presently pleaded. See Lacey v. Yates Cty., 30 F. Supp. 3d 213, 227 (W.D.N.Y. 2014) ("[W]here a plaintiff has not established any underlying constitutional violation, [a plaintiff] cannot state a claim for § 1983 supervisory liability." (internal quotation marks

16

and citation omitted)).  However, because the undersigned recommends granting plaintiff leave to replead his Section 1983 conspiracy claim, it is possible that plaintiff could make out a proper claim for supervisory liability against Target and/or Cornell in an amended pleading.  Therefore, it is recommended that plaintiff's Section 1983 failure to supervise and/or train claims insofar as asserted against Target and Cornell be dismissed without prejudice.

Insofar as plaintiff attempts to assert a failure to supervise and/or train claim against Reardon, he presents this claim in purely conclusory terms at the outset of the complaint, see Compl. at 1-2, and, aside from his vague contention that through her "policy, customs[,] and practice," Reardon "allowed" the alleged conspiracy between Loveland and Target to occur, he neither advances any arguments nor proffers any factual support to establish Reardon's personal involvement.  See id. at 9 ¶ 23; see also Green v. Greene, No. 9:07-CV-0351 (GTS/DEP), 2009 WL 5874308, at *20 (N.D.N.Y. Mar. 30, 2009) ("[M]ere vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement [to] support a finding of liability.").  Further, as discussed in subsection I.5., supra, plaintiff has failed to allege sufficient facts to establish a claim for Section 1983 conspiracy; accordingly, plaintiff cannot state a claim against Reardon for supervisory liability premised on the purported conspiracy as currently pleaded.  See Guillory v. Haywood, No. 9:13-CV-01564 (MAD), 2015 WL 268933, at *22 (N.D.N.Y. Jan. 21, 2015) ("[A] complaint that

17

fails to state a claim for the underlying unlawful conduct also fails to state a claim against supervisory officials with respect thereto."); see also Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because [the p]laintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability."). Thus, plaintiff's conclusory allegations fail to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. However, because plaintiff could possibly state a supervisory liability claim against Reardon if given the opportunity to amend, it is recommended that this claim be dismissed without prejudice.

### 7. Section 1981 Race Discrimination Claim

Under Section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Establishing a Section 1981 claim requires alleging facts showing that (1) plaintiff is a member of racial minority, (2) defendants intended to discriminate on the basis of race, and (3) the discrimination concerned one of the statute's enumerated activities. See Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000). A claim of racial discrimination requires that the plaintiff specifically allege "circumstances giving rise to a plausible inference of racially discriminatory

18

intent." Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir. 1994).  Here, plaintiff

alleges that Target's Amsterdam distribution center engaged in a pattern of

promoting white employees from the position of order picker within 45 days, while

he and a Spanish employee remained in that position for approximately seven

months and one year, respectively.  See Compl. at 4-5 ¶¶ 9-10.  At this early

stage, the undersigned finds that plaintiff has alleged enough facts to plausibly

state a racial discrimination claim under Section 1981 to proceed.


### 8. Hostile Work Environment

Liberally construed, the complaint appears to sufficiently allege claims for

hostile work environment.  "To establish a hostile work environment under Title

VII, § 1981, or § 1983, a plaintiff must show that 'the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an

abusive working environment.'"  Littlejohn v. City of New York, 795 F.3d 297,

320-21 (2d Cir. 2015) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)

(citations and internal quotation marks omitted)).; see also Whidbee v. Garzarelli

Food Specailties, Inc., 223 F.3d 62, 68-69, 75 (2d Cir. 2000) (holding that

"individuals may be held liable under Section 1981," and observing that Section

1981 hostile work environment claims are assessed under the Title VII standard);

Bermudez v. City of New York, 783 F. Supp. 2d 560, 586 (S.D.N.Y. 2011)

("Hostile work environment claims under Section 1981 and Section 1983 are

19

treated identically."). Here, affording the complaint the most liberal construction, plaintiff alleges that Target and the Amsterdam distribution center managers Ryan and Jesse failed to take action to prevent wrongful acts against plaintiff, despite his formal and informal complaints that his lunch was routinely stolen and that when he began keeping his lunch in his car, other employees targeted his car by scratching and denting it. See Compl. at 3-4 ¶¶ 5-6, 5 ¶ 10, 27. Accordingly, it is recommended that plaintiff's hostile workplace claims proceed insofar as it is asserted against Target and Amsterdam distribution center managers Jesse and Ryan.[8]

### 9. Douglas Lentes

Although plaintiff names Lentes as a defendant, plaintiff mentions Lentes only once in the body of the complaint and does not assert any claims against him or provide any factual allegations concerning Lentes whatsoever. See Compl. at 8 ¶ 23. Thus, because plaintiff has failed to allege Lentes' personal involvement in any of his purported claims, it is recommended that the complaint be dismissed without prejudice with opportunity to amended to assert sufficient facts to establish Lentes' personal involvement. See Wright, 21 F.3d at 501; Thompson v. Spota, No. 14-CV-2473 (JMA/AKT), 2018 WL 6163301, at *33

---

[8] Plaintiff has only identified these defendants by first name. Plaintiff is advised that, should these claims be permitted to proceed, he will be required, at a future date, to seek to amend his complaint to identify these defendants by their full names.

(E.D.N.Y. Aug. 23, 2018) ("Like liability under Section 1983, personal involvement is a prerequisite for liability under Section 1981."), report and recommendation adopted, No. 14-CV-2473 (JMA/AKT), 2018 WL 4771901 (E.D.N.Y. Sept. 30, 2018).

### 10. Unnamed Target HR Employee[9]

Plaintiff alleges that the unnamed Target HR employee "admitted . . . that discrimination was a good thing" and contends that she unlawfully discriminated against him by not providing him with a normal transfer pursuant to Target's policy manual, lied that plaintiff "never did any transfer," and allowed Target management to interfere with his transfer. Compl. at 4 ¶ 7, 8 ¶ 23. Plaintiff does not, however, make any assertions that the unnamed Target HR employee discriminated against him on the basis of his race and, therefore, fails to plausibly allege a Section 1981 racial discrimination claim against her. See Brown, 221 F.3d at 339. Further, to the extent that plaintiff attempts to allege that the unnamed Target HR employee was involved in the purported Section 1983 conspiracy claim, as discussed in subsection I.5., supra, plaintiff failed to allege sufficient facts to plausibly assert such a claim. Moreover, plaintiff's claims against the unnamed Target HR employee are not only wholly conclusory in that

---

[9] Plaintiff is reminded that, should any claim against the unnamed Target HR employee proceed, he will be required to identify this defendant by her full name. Failure to do so could result in dismissal of this defendant.

they are unsupported by any factual allegations, but also contradict plaintiff's other allegations, including that the unnamed Target HR employee processed the paperwork for his transfer request and informed him that she was waiting to hear back from the New Jersey distribution center when plaintiff followed up with her, and that manager Jesse prevented manager Ryan from interfering with his transfer request.  See id. at 5-6 ¶¶ 12-13, 14, 15.  Plaintiff's allegations in this regard also conveniently ignore that he chose to move to New York City on July 5, 2019—despite admittedly not having received written approval from Target for his requested transfer.  See id. at ¶ 15.  Thus, plaintiff's conclusory and speculative allegations fail to state a claim against the unnamed Target HR employee.  However, plaintiff may be able to assert a plausible claim against her if given the opportunity to amend.  Therefore, it is recommended that the complaint be dismissed without prejudice with opportunity to amend insofar as asserted against the unnamed Target HR employee.

## II. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED**, that the following of plaintiff's claims be **DISMISSED WITH PREJUDICE AND WITHOUT OPPORTUNITY TO AMEND**: claims for money damages insofar as asserted against Reardon and Loveland in their

official capacities and Title VII claims insofar as asserted against the individual

defendants in their individual and official capacities; it is further

**RECOMMENDED**, the following of plaintiff's claims be **DISMISSED**

**WITHOUT PREJUDICE AND WITH OPPORTUNITY TO AMEND**[10]: Section

1983 conspiracy claim and Section 1983 failure to supervise and train claims and

it is further

**RECOMMENDED**, that the complaint, insofar as asserted against Lentes

and the unnamed Target HR employee, be dismissed without prejudice; and it is

further

**RECOMMENDED**, that that the remainder of plaintiff's complaint be

permitted to proceed; and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-

Recommendation and Order, plaintiff be given thirty (30) days from the date of

the Order adopting this Report-Recommendation and Order to file an amended

complaint, and if plaintiff does not file an amended complaint, (1) it will be

deemed as an abandonment of any claims for which leave to replead has been

granted and will result in judgment being entered against plaintiff on these claims

without further order by the Court, and (2) the matter be returned to the

---

[10] Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp., 434 U.S. 1014(1978); see also Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action.

23

Magistrate Judge for service of the original complaint for any claims that were permitted to proceed in the original complaint, with all other claims deemed stricken.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[11]

Dated: April 2, 2020
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[11] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

24