**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

REUBEN AVENT,

                              Plaintiff,

              v.

ROBERTA REARDON, et al.,                                   No. 1:19-CV-1565
                                                           (GTS/CFH)

                              Defendants.


**APPEARANCES:**                    **OF COUNSEL:**

REUBEN AVENT
2363 Adam Clayton Powell Jr. Blvd.
Apt. 5j
New York, New York 10030
Plaintiff pro se


**MEMORANDUM, DECISION & ORDER**

**I. Background and Procedural History**

On April 2, 2020, the undersigned issue a Report-Recommendation & Order

granting plaintiff's application to proceed in forma pauperis ("IFP").  See Dkt. No. 5.

Upon initial review of the Original Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and

28 U.S.C. § 1915A(b), the undersigned recommended that the following of plaintiff's

claims be dismissed with prejudice: (1) claims for money damages against Reardon and

Loveland in their official capacities; and (2) Title VII claims asserted against the

individual defendants in their individual capacities.  See Dkt. No. 5 at 23.  The

undersigned further recommended that the following claims be dismissed without

prejudice and with opportunity to amend: (1) Section 1983 conspiracy claim; and (2)

Section 1983 failure to train/supervise claim; (3) claims against Lentes; and (4) claims against the Unknown Target HR employee.  See id.  The undersigned recommended that plaintiff's remaining claims survived *sua sponte* review and be permitted to proceed.  See id.  On April 27, 2020, plaintiff filed objections to the undersigned's April 2, 2020 Report & Recommendation.  See Dkt. No. 6.  On July 20, 2020, Chief United States District Court Judge Glenn T. Suddaby accepted and adopted the undersigned's April 2, 2020 Report & Recommendation in its entirety, and afforded plaintiff the opportunity to file an Amended Complaint solely with regard to his Section 1983 conspiracy and failure to supervise claims.  See Dkt. No. 7.  Thereafter, the Court granted plaintiff's letter motion for an extension of time to file an amended complaint with respect to his Section 1983 conspiracy claim and Section 1983 failure to train/supervise claim.  See Dkt. Nos. 8, 9.  On August 31, 2020, plaintiff filed his Amended Complaint.  See Dkt. No. 10 ("Am. Compl.").

## II. Legal Standard

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

2

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).  However, this does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims.  Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . .
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Id. (citations omitted).  In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint.  See Simmons v. Abruzzo,

4

49 F.3d 83, 86-87 (2d Cir. 1995).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).

### III. Plaintiff's Amended Complaint[1]

### A. Section 1983 Conspiracy Claim

The elements of a claim for conspiracy under 42 U.S.C. § 1983 are: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir.1999) (citation omitted).  "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act."  Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992).  Put differently, a private actor acts under color of state law when the private actor "is a willful participant in joint activity with the State or its agents."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (quoting United States v. Price, 383 U.S. 787, 794 (1966)).  "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to

---

[1]  Because of plaintiff's pro se status, the undersigned has considered the allegations in the complaint along with the documents attached thereto.  See, e.g., Anthony v. Murphy, No. 5:15-CV-00450 (DNH/TWD), 2015 WL 1957694, at *1 n.1 (N.D.N.Y. Apr. 28, 2015) ("[I]n light of [the p]laintiff's pro se status, the Court has considered the allegations in, and attachments to, both [the p]laintiff's original and amended/supplemental complaints upon its initial review."), report and recommendation adopted, No. 5:15-CV-450 (DNH/TWD), 2015 WL 3409261 (N.D.N.Y. May 27, 2015).

state a § 1983 claim against the private entity." Ciambriello v. Cty. of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (citing Spear, 954 F.2d at 68).

In his Amended Complaint, plaintiff alleges that Reardon, Loveland, Target employees Lentes, CEO Cornell, Jesse Fetcho, Ryan, and the Unknown HR employee, conspired to "fire plaintiff [during] his granted leave of absence and transfer in retaliation for making an [in-house] complaint about . . . discrimination and/or retaliate against plaintiff for filing an EEOC discrimination complaint against Target in manufacturing unjust cause for termination."  Am. Compl. at 30.  Plaintiff alleges that the Target defendants suppressed "records and information of his leave of absence and his transfer request to aid the [NYS] DOL defendants in furtherance of misusing the state authority of unemployment to file fraud charges against him of [sic] he didn't falsely admit to voluntary leaving his employment."  Id.

Plaintiff reasserts his contentions from his Original Complaint that, "[i]n or about early June 2019," he filed an in-house complaint with Target concerning his racial discrimination and hostile work environment allegations.  See Am. Compl. at 6 ¶ 12; Dkt. No. 10-1 at 14.  Plaintiff alleges that, "on June 18[,] 2019[,] or so," he went to human resources to request a transfer from Target's Amsterdam, New York, distribution center to a distribution center closer to New York City, where he planned to move on July 5, 2019.  See Am. Compl. at 7 ¶ 15.  Plaintiff states that, "[a]t that time [the U]nknown [HR] employee did put in the paperwork to have him transferred and called the Distribution Office which stated that they would accept [plaintiff] only on an agreement that plaintiff would be able to work the following week of moving to New York City."  Id.  Plaintiff also alleges that the Unknown HR Employee told him that she would

process his transfer request "when he was within two weeks of moving and that it only

took a week to do." Id. at 6 ¶ 14.  "However," plaintiff contends, the Unknown HR

Employee "acquiesced into the conspiracy with the others after filing such to

suppressing the transfer." Id.  Plaintiff posits that the Unknown HR Employee "failed to

give [him] any written paperwork or any proof or procedural format for such." Id. at 7 ¶

15.  In addition, plaintiff states that he "kept checking the unknown HR [Employee] to

receive written approval from the New Jersey distribution center and she always said

she was still waiting on them." Id. at ¶ 17.  Plaintiff posits that "[t]he Unknown HR

[Employee] avoid[ed] plaintiff's phone calls and did not properly process the transfer

and then refused to process it at all." Id. at 8 ¶ 18.  Plaintiff avers that, based on the

foregoing, the Unknown HR Employee [o]bviously join[ed] the conspiracy to fire [him] for

his in house complaint of discrimination and later continuing that conspiracy to retaliate

against plaintiff for filing his EEOC inquiry by means of manufacturing false justifications

for each." Id.

        Further, plaintiff states that, on or around July 3, 2019, he "still didn't receive

written approval" of his transfer request, but received permission from "Jesse to take a

two week NS," non-scheduled leave of absence, from his employment at Target, "which

would start on July 8, and end July 21, 2019." See Am. Compl. at 7 ¶ 17.  Plaintiff's

EEOC complaint indicates that "Jessie approved a leave of absence for [plaintiff] from

July 9, 2019 through July 19, 2019." Dkt. No. 10-1 at 15.  Plaintiff states that "[t]he

difference between the dates said in other papers," apparently referring to his EEOC

complaint, "is because in reality [he] included his days off surrounding his approved

leave of absence period in which he wouldn't be scheduled to work" and that "the official

papers wouldn't reflect his days off."  Am. Compl. at 8 n.6.  Plaintiff has attached, as an exhibit to his Amended Complaint, a document containing the dates of his absences from work, which indicates that on July 2, 2019 plaintiff left work early ("EARLY OUT"), and on July 5, 2019, plaintiff was absent from work.  Dkt. No. 10-1 at 7.  On July 9, 10, 11, and 12, 2019, plaintiff is listed as "ABSENT Att - Absence – No Call No Show," and again listed as "ABSENT" on July 16, 2019.  Id.  Without having received approval of his requested transfer, plaintiff states that he "move[ed] to New York City" on July 5, 2019.  Am. Compl. at 8 ¶ 18.  In August 2019, plaintiff received a termination letter from Target dated July 16, 2019, which had initially been sent to his upstate New York address.  See id. at 9 ¶ 20; Dkt. No. 10-1 at 15.  Prior to receiving his termination letter, plaintiff states that he "filed for his unemployment benefits from his prior employment . . . stating that he was unsure what his status was but he was actually laid off due to the lack of work."  Id. at 9-10 ¶ 19.  Plaintiff's exhibits indicate that he certified for unemployment benefits on July 23, 2019.  See Dkt. No. 10-1 at 10.

Plaintiff realleges his contentions contained in his Original Complaint that, on some unspecified date after he filed for unemployment benefits, Loveland, and employee of the NYS DOL, "called [him] in attempts to bribe [him] in order to keep receiving unemployment benefits stating he 'is going to say he voluntarily quit his Target employment[.]"  Am. Compl. at 9 ¶ 22.  Plaintiff reasserts that he "disagreed" with Loveland's alleged proposal, in response to which Loveland stated, plaintiff "was going to state he quit or 'face serious charges against himself from this office.'"  Id.  Plaintiff alleges that he again refused to comply with Loveland's orders and "faxed the [NYS DOL] his [w]ritten EEOC report  . . . and the termination papers from Target showing he

8

was fired and . . . did not voluntarily quit." Id.  On October 30, 2019, plaintiff filed his

EEOC complaint in which he alleged, among other things, that "Target unlawfully used

the unemployment process through the Unemployment official, who continued to ask

[him] to say that [he] voluntarily left Target of [his] own free will, all in an effort to extort

[him]—from pursuing [his] earlier discrimination claim, so that [he] would continue to

receive unemployment benefits."  See Dkt. No. 10-1 at 15.  Plaintiff contends that

Lentes attempted "to get rid of plaintiff's EEOC . . . inquiry by having the [NYS] DOL

defendants together offer plaintiff an ultimatum or/and threaten plaintiff with fraud

charges." Id. 23 at ¶ 51.

     Plaintiff alleges that, "[o]n reasonable evidence and belief, [a]ll Target

[d]efendants seeking to retaliate and dispose of his EEOC complaint inquiry . . . had

[the] NYS [DOL d]efendants charge [him] with fraud, and illegally collecting

unemployment benefits because he voluntarily quit his job at Target in Amsterdam[,]

New York."  Am. Compl. at 9 ¶ 21.  "[I]n furtherance of this joint conspiracy and

retaliation NYS [DOL] employee . . . Loveland[] did file fraud charges and decision of

[plaintiff] illegally frauding [sic] unemployment benefits because he quit his Target

employment and did so in order to benefit [a]ll Target defendants mentioned here."  Id.

at 10 ¶ 23.  Prior to filing his EEOC complaint, an Administrative Law Judge ("ALJ") at

the NYS DOL issued an initial determination disqualifying plaintiff from receiving

unemployment benefits, finding that he received overpayment of benefits, and imposing

a civil penalty against him.  See id.; Dkt. No. 10-1 at 12.  Plaintiff appealed the ALJ's

initial determination.  See Dkt. No. 10-1 at 12.  On October 31, the NYS DOL

Unemployment Insurance Appeals Board ("Appeals Board") issued a decision modifying

the ALJ's initial determination by finding that "the credible evidence establish[ed] that

[Target] discharged [plaintiff] for not show [sic] for his shifts"; plaintiff did not know why

he was terminated when he applied for unemployment benefits because he had not yet

received the termination letter and, therefore, plaintiff did not make a willful

misrepresentation; plaintiff was not overpaid $1,464.75; and that no penalty should be

imposed.  Id.  On November 29, 2019, plaintiff received a right-to-sue letter from the

EEOC.  See id. at 16-17

> Plaintiff alleges that
>
>> Target, defendants Lentes, Cornell, Loveland and Reardon
>> all conspired to retaliate against plaintiff for initiating an
>> EEOC complaint to deprive him of his Civil Rights by
>> reopening plaintiff's verified unemployment claim with
>> Walmart, they all conspired to reopen such verified
>> unemployment and falsely have Target stand as the verifying
>> employment insurer to intimidate plaintiff from his EEOC
>> inquiry to Target's discrimination and did so by denying
>> [plaintiff] all due process and protections and then refused to
>> stand on their misconduct, fake documents and blank
>> required documents concerning such charges at the
>> administrative hearing.

Id. ¶ 23d (emphasis added).  In support of his contention that Target submitted blank

documents, plaintiff points to a NYS DOL document titled "Verification of Employment,"

dated July 25, 2019.  See Dkt. No. 10-1 at 20.  The document lists Target and its

Amsterdam, New York, distribution center's address, and states that plaintiff "has filed a

claim for Unemployment Insurance, naming you as a former employer.  Please review

the information on the second page of this form.  If you know any reason why the

claimant should not receive benefits or if the information he or she provided is incorrect,

you may protest this claim."  Id.  The second page of the form is not filled out.  See id. at

21.  Further, plaintiff alleges that Lentes and Loveland "had several meetings . . . via

10

secret communication and conspired with the defendant which was legally representing Target." Id. at 11 ¶ 23b.[2]  Plaintiff also references an Equifax document from TALX UCM Services, "a duly authorized agent empowered to act on behalf of [Target]," dated August 13, 2019, sent from Lentes to the NYS DOL, which is addressed, "Dear State Representative," and states that the document "is in response to form LO18, Request for Additional Separation Details, dated August 9, 2019." Id. 10-1 at 1.  The document lists plaintiff's first day of employment at Target as March 5, 2019, and his last day as July 5, 2019, and states that plaintiff "was considered to have voluntarily quit after failing to call or report for three scheduled days of unreported absences." Id.  Attached to the Equifax document is the second through fourth pages of a NYS DOL questionnaire dated August 13, 2019, which states "EFF. DT. 01/07/2019," and provides that plaintiff's last physical day of work was July 5, 2019, and that Target became aware that plaintiff quit his job when "he did not call or report on: 7/9, 7/10, 7/11 and 7/12." Id. at 2,3.  The questionnaire further provides that, although available, plaintiff did not "request a leave of absence" "[b]efore quitting." Id. at 3.  Moreover, the questionnaire indicates that plaintiff did not "request a transfer to other work" before quitting, although one was available. Id.  In addition, the questionnaire states that plaintiff did not "take any other steps to resolve the situation before quitting." Id.

Plaintiff also references an August 5, 2019 Equifax document which clarifies that plaintiff's last physical date of work was July 5, 2019; that his "[e]ffective date of separation" was July 16, 2019; and provides that plaintiff "called inquiring about transfer

---

[2]  The "defendant" plaintiff appears to be referring to here is TALX UCM Services; however, the undersigned notes, plaintiff has not named that entity as a defendant in this action.  See Am. Compl. at 11 ¶ 23b.

Tuesday 7/23/19," in response to whether he "attempt[ed] to make contact any later" time after his separation from employment.  Dkt. No. 10-1 at 18.  Plaintiff argues that the Equifax documents and attachment are "fake," and that all defendants acted together and "filed papers in the unemployment office unlawfully concealing [plaintiff's] actions of initiating the transfer process.  Am. Compl. at 11 ¶ 23d; 12 ¶ 25.  In addition, plaintiff contends that, at the time he certified for unemployment benefits, "Loveland disregarded the fact that Target was not his unemployment insurer nor paying for his unemployment benefits, nor was their Employment Identification Number on the paperwork."  Id. at ¶ 23a.  Rather, plaintiff posits, Walmart, the owner of his previous employer, Sam's Club, "was the entity that was sending the unemployment checks."  Id. at 16 ¶ 32.

Alternatively, plaintiff argues that "[a]ll defendants, . . . shared a common conspiracy to deprive plaintiff of his civil rights and violated several of his constitutional rights . . . from the outset of [his] employment interview."  Am. Compl. at 31.  In this regard, plaintiff alleges that there was a "joint effort between Target and the [NYS] DOL employees to direct diverse employee prospects to Target Distribution Center with Target's 2018 EEOC discrimination settlement."[3]  Id.  Plaintiff contends that the NYS DOL facilitated unemployed persons, such as plaintiff, in obtaining employment at Target, "knowing that Target . . . and CEO Cornell did not ever address the racially divisive culture and atmosphere inside of its work[]places which resulted from its long lasting racial discrimination hiring practices."  Id.  Plaintiff states that "Target had prior employees working at the [NYS] DOL unemployment office in Schenectady where

---

[3]  Plaintiff's reference to a 2018 settlement appears to be based on his "research[ of Target's] prior legal discrimination settlements and actions in federal courts," which, to him, made it "obvious that the defendants were fighting the laws surrounding equal protection of blacks."  Am. Compl. at 3 ¶ 8.

plaintiff was offered a job for Target," and that "Target and several unemployment employees including several of the [NYS] DOL unemployment office female employees had their spouses employed there." Id. at 3 n.1. Based on these statements, plaintiff posits that "Target and DOL had an unofficial relationship outside of normal operations of both entities." Id. "Thus," plaintiff avers, there was always a meeting of the minds between Target, Cornell, Reardon, Lentes and Loveland relevant to the conspiracy claims despite the secret electronic communication the defendants undertook to bring fraud charges." Id. Moreover, he alleges that "unemployment education class counselor whom obtained diverse employees for Target by directing unemployed people enrolled in mandatory unemployment education to apply for employment at Target's distribution center," which he states further evidences that "[t]he required meeting of the minds and state actor influence always were extant between Target and NYSDOL in Schenectady[,] New York." Id. at 21 ¶ 47.

The Amended Complaint fails to plausibly allege a conspiracy claim under Section 1983 against Target, Cornell, or Reardon. As an initial matter, to the extent that plaintiff alleges that "there was always a meeting of the minds" based on the supposed existence of an "unofficial relationship outside of normal operations of" Target and the NYS DOL because of the NYS DOL's purported act of directing unemployed individuals to employment at Target, or that spouses of NYS DOL employees worked at Target, plaintiff's allegations are conclusory and fail to establish that Target was acting under the color of state law. Am. Compl. at 3 n.1; see Ciambriello, 292 F.3d  324 (citing Spear, 954 F.2d at 68). Rather, plaintiff's allegations in this regard amount only to "[t]hreadbare recitations of the elements of a cause of action, supported by mere

conclusory statements," insufficient to plausibly state a cause of action for Section 1983 conspiracy.  Iqbal, 556 U.S. at 678.  In addition, with respect to Cornell, the Amended Complaint suffers from the same defect as the Original Complaint in that plaintiff advances only conclusory allegations with respect to Cornell's involvement in the alleged conspiracy and, therefore, has failed to establish Cornell's personal involvement—which is fatal to his Section 1983 conspiracy claim.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citations omitted)).

Next, the undersigned concludes that plaintiff's Amended Complaint fails to plausibly allege a Section 1983 conspiracy claim against the Unknown HR Employee, Jesse, and Ryan.  Insofar as plaintiff contends that the Unknown HR Employee "suppress[ed]" his transfer request as part of a greater conspiracy to get him fired or retaliate against him for his in-house complaint or EEOC complaint, his contention is based entirely on his speculative assertion that the documentary evidence he proffered in support of his complaint—which directly contradicts his claims—is false.  See Am. Compl. at 6 ¶ 14, 8 ¶ 18.  For instance, the August 13, 2019 Equifax document expressly states that plaintiff failed to request a transfer, a leave of absence, or take any steps before moving to New York City in early July 2019—and plaintiff admits that he moved to New York City without having received confirmation that a transfer request was approved.  Dkt. No. 10-1 at 3.  In addition, plaintiff's work schedule corroborates the August 13, 2019 Equifax document, as it states that plaintiff was "Absen[t]-No Call No Show" on July 9, 10, 11, and 12, 2019.  Id. at 7.  Plaintiff fails to advance

nonconclusory allegations in support of his contention that all of these documents were falsified or inaccurate.  See Am. Compl. 10-12 ¶¶ 23a-d.  Moreover, plaintiffs contention that the Unknown HR Employee [o]bviously join[ed] the conspiracy to fire [him] for his in house complaint of discrimination and later continuing that conspiracy to retaliate against plaintiff for filing his EEOC inquiry," Id. at 8 ¶ 18, is entirely conclusory and is unsupported by any facts to demonstrate that the Unknown HR Employee ever made "an agreement [with] any state actor."  Pangburn, 200 F.3d at 72.  Likewise, to the extent the Amended Complaint may read as contending that Jesse and Ryan conspired to tamper with his transfer request, plaintiff's allegations are vague and conclusory, as he offers no specific factual arguments regarding those defendants engaging in conspiratorial acts.  See Am. Compl. at 30.

Plaintiff's conspiracy claims against Lentes and Loveland are similarly contradicted by his documentary evidence and also rely entirely on his conclusory allegation that the Equifax documents and work schedule are "fake."  Am. Compl. at ¶ 23d.  Plaintiff's allegations that Lentes and Loveland engaged in a "secret communication meeting" and that "Loveland had several meetings with . . . Lentes," are conclusory, as they fail to provide specific factual details of a meeting of the minds or concerted effort, such as time, place, or manner in which the two defendants allegedly conspired against plaintiff.  Id. at ¶ 23a, ¶ 23b; see Johnson v. City of New York, 669 F. Supp. 2d 444, 451 (S.D.N.Y. 2009) ("A bare assertion that a conspiracy existed, unsupported by any specific factual allegations, is itself insufficient to state a plausible claim to relief.").  In any event, the Equifax documents that plaintiff relies on in support of his allegations contain only Lentes' name—not Loveland's, as they are both

addressed, "Dear State Representative."  Dkt. No. 10-1 at 1, 18.  Thus, plaintiff's bare assertions, supported only by the Equifax documents—which do not evidence communication between Lentes and Loveland—fail to plausibly assert a claim that those two defendants conspired to deprive plaintiff of his constitutional rights.  See Webster v. Fischer, 694 F. Supp. 2d 163, 194-95 (N.D.N.Y.) (dismissing the pro se plaintiff's Section 1983 conspiracy claim where "[n]either [the] complaint nor the record before the [C]ourt provide[d] . . . a showing of agreement or a meeting of the minds, or any details as to the time and place of conspiracy or its objective." (internal quotation marks and citation omitted)).  It is also unclear from plaintiff's submission how the Equifax documents, which appear to be generic correspondence, could be considered "secret," as he obtained and proffered those documents in support of his Amended Complaint.  Am. Compl. at ¶ 23a, ¶ 23b.

Finally, insofar as plaintiff contends that Reardon and Loveland conspired with the Target defendants to retaliate against him by bringing false unemployment fraud charges, plaintiff's complaint fails to plausibly allege a Section 1983 conspiracy claim. See Am. Compl. at 9 ¶ 21.  As an initial matter, plaintiff has failed to advance any plausible allegations that Loveland or Reardon communicated and agreed to act in concert with each other and/or Target to bring unemployment fraud charges against plaintiff in retaliation for his filing complaints against Target.  See Johnson, 669 F. Supp. 2d at 451.  Further, to the extent that plaintiff avers that Reardon and Loveland improperly listed Target as his employer and that, instead, Walmart should have been listed, his claims are vague, conclusory, and entirely unsupported by any plausible factual assertions, as plaintiff fails to explain how Walmart could possibly have been

16

responsible for his unemployment benefits when he had worked full time for Target from March 2019, until his termination in July 2019.  See id. at 11 ¶ 23d, n.8, 16 ¶ 32. Moreover, the fact that the NYS DOL Appeals Board ultimately overruled the ALJ's initial unemployment benefits determination does not establish that the claims brought against plaintiff were fraudulent; rather, the allegations and documentations proffered in support of the Amended Complaint establish that Target terminated plaintiff's employment for his failure to attend work without calling in, and that he did not receive his termination letter from Target prior to filing for unemployment insurance after moving to New York City without making a transfer request and without receiving permission to take leave on July 9, 10, 11, and 12, 2019.  See Dkt. No. 10-1 at 3, 7.  Indeed, plaintiff admits that, at the time he filed for unemployment in early July 2019, after moving to New York City, he was not certain of his employment status at Target, and did not receive his termination letter until August 2019.  See Am. Compl. at 8 ¶ 18.  In any event, the issues of plaintiff's termination versus his voluntary discontinuance of employment was clarified and remedied by the Appeals Board's when it overruled the ALJ's initial determination, and plaintiff ultimately suffered no adverse consequences as a result thereof.  See Dkt. No. 10-1 at 12.  Therefore, the fact that the NYS DOL issued an initial decision declaring plaintiff ineligible to receive unemployment benefits at that time does not establish a conspiracy.

## B. Section 1983 Failure to Train and/or Supervise Claims

A claim for relief under § 1983 must allege facts showing that the defendant acted under color of a state "statute, ordinance, regulation, custom or usage."  42

U.S.C. § 1983.  Private parties are not liable under § 1983 unless they act under color of state law.  See Hooda v. Brookhaven Nat. Lab., 659 F. Supp. 2d 382, 392 (E.D.N.Y. 2009).  "For the conduct of a private entity to be fairly attributable to the state, there must be such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  Crawley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 111 (2d Cir. 2003) (internal quotation marks and citation omitted).  A private defendant may be held liable as "'a willful participant in joint activity with the State or its agents.'"  Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (quoting United States v. Price, 383 U.S. 787, 794 (1966)).  Alternatively, claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law . . . collaborated or conspired with a private person . . . to deprive the plaintiff of a constitutional right."  Fries v. Barnes, 618 F.2d 988, 990 (2d Cir. 1980) (citation omitted).

In the Amended Complaint, plaintiff contends that "Target and Cornell fostered a policy of failing to establish any training substantial enough to address the racial disparity it created and failed to enact procedures to allow anti-discrimination training and supervision."  Am. Compl. at 32.  He posits that "[d]efendants lack of supervision and training as well as their active participation of ignoring plaintiff's complaints led to plaintiff's injuries and would not have happened if it weren't for defendants [sic] lack of concern and deliberate indifference for plaintiff's constitutional and civil rights."  Id.  He states that "Cornell and Target failed to supervise and/or train Defendant employees and basically participated and ordered the facility to be conducted in such a manner without proper diversity training."  Id. at 33.  Further, plaintiff argues that neither "Target,

nor CEO Cornell implemented effective grievance mechanisms to resolve internal

disputes and complaints made by plaintiff in person or over the phone"; did not

"establish any legitimate or/and effective grievance procedures."  Id. at 22 ¶ 50.

In addition, plaintiff argues that "Reardon equally failed to train and/or supervise

NYS DOL employees, namely Loveland[,] whom both conspired with Target defendants

to retaliate against . . . plaintiff and loan those defendants the authority of their state

office to do so and Reardon was so indifferent to plaintiff's constitutional rights that she

disregarded her employees misconduct and defiance of all said NYSDOL rules and

regulations as well as [NYS] DOL laws and procedures."  Am. Compl. at 32-33.

Plaintiff argues that Reardon allowed "Loveland and others under her control to alter her

employment documents, move to charge plaintiff without the required [NYS] DOL

normal unemployment process," and to "allow[] the insuring employer EIN . . . to be

falsely used to identify the Target," "which was not Target's legal EIN" in order to "allow[]

Loveland to exploit the NYS DOL process and pretend the unemployment benefits were

in connection with the plaintiff's brief employment with Target making it possible for the

Target defendants to retaliate against plaintiff using NYSDOL process and authority."

Id. at 15-16 ¶ 31.  He asserts that,

> [i]f Loveland was properly trained or/and supervised by
> Defendant Reardon she would not have been able to
> conspire with Target, and Lentes to deprive plaintiff of his
> constitutional rights to be free from retaliation, his public
> unemployment benefits would not have been interrupted and
> him not being able to be harassed by a third party Target
> Corporation for his complaints inside the organization nor for
> his complaints to EEOC.

Id. at 12-13 ¶ 23d.  Plaintiff also contends that Reardon allowed "Loveland to ignore

inconsistencies among the unemployment data that should have raised red flags,"

including, plaintiff posits, that "Loveland and other employees equated the month and a half of unemployment benefit funds plaintiff obtained prior to his employment with the Target Company of January 19, 2019 to and through August 27, 2019 even though the [NYS] DOL record showed his benefits were interrupted because of his employment with Target." Id. at ¶ 32.

The Amended Complaint fails to adequately allege that Target acted under color of state law, and plaintiff fails to proffer any specific facts or arguments in support of his contention that Target failed to train its employees. See Am. Compl. at 22-23 ¶ 50. Further, plaintiff's claim that Cornell failed to implement a grievance procedure for internal complaints is conclusory and contradicted by plaintiff's own allegations that the Target defendants retaliated against him for availing himself of Target's in-house complaint process. See id. at 22-23 ¶ 50. As in his Original Complaint, plaintiff asserts only vague and conclusory assertions against Cornell and, therefore, has again failed to establish Cornell's personal involvement. See Wright, 21 F.3d at 501. Moreover, as discussed in detail above, the Amended Complaint fails to plead facts sufficient to establish a claim for Section 1983 conspiracy and plaintiff's allegations concerning the purported "unofficial relationship" between Target and the NYS DOL are implausible; accordingly, plaintiff cannot establish supervisory liability against Cornell based on his conspiracy allegations. See subsection III.A., supra; Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y.2011) (where the plaintiff "has not established any underlying constitutional violation, [the plaintiff] cannot state a claim for § 1983 supervisory liability."); see also Blyden v. Mancusi, 186 F.3d 252, 265 (2d Cir.1999) ("Of

course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation.").

Similarly, plaintiff's allegations that Reardon allowed Loveland to ignore applicable laws and regulations and that, had Reardon properly trained and/or supervised Loveland, "she would not have been able to conspire with Target, and Lentes," are conclusory and premised on plaintiff's deficient conspiracy claims. Id. at 12-13 ¶ 23d. Therefore, as plaintiff has failed to plausibly allege a Section 1983 conspiracy claim, he cannot establish a claim for supervisory liability against Reardon based thereon. See Elek, 815 F. Supp. 2d at 808; Blyden, 186 F.3d at 265. Moreover, insofar as plaintiff avers that Reardon was responsible for the NYS DOL ALJ's initial determination because of her failure to train or supervise Loveland, plaintiff's claims are wholly conclusory. See Am. Compl. at 13 ¶ 25. As discussed above, plaintiff's documentary evidence and pleadings undercut this assertion, as plaintiff has established that the initial determination was the result of inadequate information, including that plaintiff decided to file for unemployment at a time when he admittedly did not know his employment status with Target. See subsection III.A., supra. In any event, neither Reardon's nor Loveland's names are contained in the NYS DOL Appeals Board's decision. See Dkt. No. 10-1 at 8-12.

In light of the foregoing, the undersigned concludes that plaintiff has failed to adequately allege claims for Section 1983 conspiracy or supervisory liability. Plaintiff has had two opportunities to adequately assert these claims and has demonstrated twice that he is unable to state a claim upon which relief can be granted for these claims. See Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir.1993) ("Where it

appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."); <u>Brown v. Peters</u>, No. 95-CV-01641, 1997 WL 599355 (RSP/DS), at *1 (N.D.N.Y. Sept. 22, 1997) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile."). In addition, the undersigned acknowledges the solicitude due <u>pro se</u> plaintiffs, and, in consideration with his extensive experience with litigating cases in federal court,[4] the undersigned believes all due solicitude has been properly afforded. Thus, because the undersigned concludes that plaintiff cannot state claims for Section 1983 conspiracy and supervisory liability without an entirely new set of facts, any further amendment would be futile. Accordingly, plaintiff's Section 1983 conspiracy and supervisory liability claims are dismissed with prejudice and without opportunity to amend.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that the filing of plaintiff's Amended Complaint (Dkt. No. 10) be rejected; and it is further;

**ORDERED**, that plaintiff's claims for conspiracy and supervisory liability pursuant to 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE AND WITHOUT OPPORTUNITY TO AMEND**; and it is further

---

[4] <u>See</u> 04-CV-0302(NDNY), 05-CV-1311 (NDNY), 07-CV-1135 (NDNY), 09-CV-0436 (NDNY), 19-CV-0070(NDNY), 19-CV-0830 (NDNY), 19-CV-0831 (NDNY), 02-CV-5315 (SDNY), 02-CV-6036(SDNY), 02-CV-6037 (SDNY), 08-CV-0932 (SDNY), 19-CV-9773 (SDNY), 19-CV-10907(SDNY), and 19-CV-10923 (SDNY).

**ORDERED**, that the action be **DISMISSED WITH PREJUDICE** against defendants Cornell, Reardon, Loveland, Lentes, and the Unknown Target HR Employee; and it is further

**ORDERED**, that plaintiff's Original Complaint (Dkt. No. 1), as limited by Chief Judge Suddaby's July 20, 2020 Decision & Order (Dkt. No. 7), remain the operative pleading, leaving as plaintiff's sole remaining claims: (1) Title VII employment discrimination claim against Target; (2) Title VII retaliation claim against Target; (3) 42 U.S.C. § 1981 race discrimination claim against Target; (4) Title VII, 42 U.S.C. § 1981, and/or 42. U.S.C. § 1983 hostile work environment claim against Target, Jesse Fetcho, and Ryan Doe.[5]

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[6]

---

[5]  Plaintiff has only identified defendant Ryan by his first name.  Plaintiff is advised that he will be required, at a future date, to seek to amend his complaint to identify this defendant by his full name.

[6]  If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).

Dated: December 22, 2020
    Albany, New York


Christian F. Hummel
U.S. Magistrate Judge