UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

REUBEN AVENT,

                            **Plaintiff,**

v.                                                    1:19-CV-1565 (NAM/CFH)

TARGET CORPORATION, JESSE FETCHO,
and RYAN DOE,

                            **Defendants.**
────────────────────────────────────────

**APPEARANCES:**

Reuben Avent
2363 Adam Clayton Powell Jr. Blvd.
Apartment 5J
New York, NY 10030
*Plaintiff Pro Se*

Sanjeeve K. DeSoyza
Paul Buehler, III
Bond, Schoeneck & King, PLLC
22 Corporate Woods Blvd., Suite 501
Albany, NY 12211
*Attorneys for Defendants*

**Hon. Norman A. Mordue, Senior United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff *pro se* Reuben Avent brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*. ("Title VII"), 42 U.S.C. 1981 ("Section 1981"), and 42 U.S.C. 1983 ("Section 1983"), alleging claims of discrimination, retaliation, and hostile work environment against his former employer, Target Corporation, and managers Jesse Fetcho and Ryan Doe (collectively, "Defendants"). (Dkt. No. 1). Now before the Court is Defendants'

1

motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 28). Plaintiff has not filed a response to the motion, despite receiving an extension to do so. (Dkt. Nos. 35, 45). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## II.     BACKGROUND

### A. Procedural History

Plaintiff commenced this action on December 18, 2019, alleging a host of claims related to his former employment at Target. (Dkt. No. 1). Plaintiff also sought leave to proceed in forma pauperis. (Dkt. No. 2). On April 2, 2020, United States Magistrate Judge Christian F. Hummel conducted a review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), the statute governing proceedings in forma pauperis. (Dkt. No. 5). Liberally construing the Complaint, Judge Hummel identified the following claims: "1) pursuant to Title VII, (a) employment discrimination, and (b) retaliation; (2) pursuant to 42 U.S.C. § 1983, (a) failure to supervise and train; and (b) conspiracy; and (3) pursuant to 42 U.S.C. § 1981, (a) racial discrimination and (b) hostile work environment." (*Id.*, pp. 5–6). Judge Hummel recommended that: 1) Plaintiff's claims for money damages against Defendants Reardon and Loveland in their official capacities be dismissed with prejudice; 2) the Title VII claims against the individual defendants be dismissed with prejudice; 3) the Section 1983 conspiracy and failure to train/supervise claims be dismissed without prejudice; 4) the claims against Defendant Lentes and the unnamed Target HR employee be dismissed without prejudice; and 5) that the rest of Complaint be permitted to proceed (in forma pauperis). (*Id.*, pp. 22–23). On July 20, 2020, the Court (Suddaby, C.J.), adopted Judge Hummel's recommendation in its entirety. (Dkt. No. 7).[1]

---

[1] This case was reassigned to the Hon. Norman A. Mordue on June 14, 2021. (Dkt. No. 46).

Plaintiff was permitted leave to amend, but his Amended Complaint, (Dkt. No. 10), failed to address the deficiencies identified by Judge Hummel. Accordingly, on December 28, 2020, the Court ordered that: 1) the filing of Plaintiff's Amended Complaint be rejected; 2) Plaintiff's claims for conspiracy and supervisory liability pursuant to Section 1983 be dismissed with prejudice; 3) the action be dismissed as to Defendants Cornell, Reardon, Loveland, Lentes, and the unnamed Target HR Employee; and 4) the original Complaint remain the operative pleading in this case, as limited by Judge Suddaby's July 20, 2020 Decision. (Dkt. No. 12; *see also* Dkt. No. 18).

Thus, Plaintiff's remaining claims are as follows: 1) Title VII discrimination against Target; 2) Title VII retaliation against Target; 3) Section 1981 race discrimination against Target; and 4) Title VII, Section 1981, and/or Section 1983 hostile work environment against Target, Jesse Fetcho, and Ryan Doe. (*See* Dkt. Nos. 12, 18).

**B. Relevant Facts**

The Court will briefly review the relevant facts as alleged in the Complaint and cogently summarized by Judge Hummel. Plaintiff alleges that he was employed by Defendant Target at a distribution center in Amsterdam, New York between March and July 2019, where he worked as an "order picker." (Dkt. No. 1, pp. 4–5). Plaintiff is from the New York City area, but he was living in upstate New York at the time. (*Id.*, p. 23).

Plaintiff, an African-American man, alleges that the Target distribution center endorsed a policy of racial animus against black employees, including requiring him to "do not only his job but also the work of other white employees while they received promotions" and he did not, and that Plaintiff was targeted by white employees who stole his lunch and put "scratches and small dents" in his car after he was forced to keep his lunch in his car. (*Id.*, pp. 3–4). Plaintiff claims

3

that he complained to managers Fetcho and Doe about his lunch being stolen, but that they did not take any action to remedy the situation. (*Id.*, p. 4).

Plaintiff alleges that the Amsterdam distribution center was "so large that no white employees stayed in warehouse [sic] as an order picker no more [sic] than 45 days. However, [Plaintiff] and [o]ne Spanish guy had been there since employed." (Dkt. No. 1, p. 5). Plaintiff alleges that he "was an [o]rder [p]icker from March[] 5[,] 2019 to and through July 16, 2019 and the Spanish guy had been an Order picker for a year." (*Id.*). According to Plaintiff, he "filed an filed an in[-]house complaint with Target Corporate office [sic] on the facility computer." (*Id.*). In the in-house complaint, Plaintiff alleged that because of his race, he had been passed up for promotions, given more and harder work than white employees, and that his lunch had been stolen. (*Id.*, p. 27).

Plaintiff alleges that on or about June 18, 2019, he "went to human relations saying he was scheduled to move back to New York [City] on July 5[], 2019," and requested a transfer to a distribution center closer to the New York City area." (Dkt. No. 1, p. 5). According to Plaintiff, the HR employee "put in the paperwork to have [him] transferred and called the [d]istribution [o]ffice which stated that they would accept [Plaintiff] only on an agreement that [he] would be able to work the . . . week" after "moving to New York City." (*Id.*). Plaintiff was also allegedly told to inform his manager of his request so that he could be replaced. (*Id.*). Plaintiff claims that upon informing his manager, Defendant Doe "became irate" and told Plaintiff that the transfer request must be rescinded. (*Id.*, p. 6). According to Plaintiff, Defendant Fetcho, also a manager, "intervene[d]" and "advise[d] [Ryan that] he could not tell" Plaintiff to go back to HR and rescind the transfer request, although Fetcho was "also in disagreement with [Plaintiff's] transfer

4

decision." (*Id.*). Fetcho approved a two-week non-scheduled leave of absence for Plaintiff from July 8 to July 21, 2019. (*Id.*).

Plaintiff alleges that after working on July 3, 2019, he still had not received written approval from HR for the transfer, but he moved to New York City on July 5, 2019. (Dkt. No. 1, p. 6). Plaintiff allegedly called Target on July 23, 2019 to inquire about his requested transfer to a New Jersey distribution center and was told that they "would investigate such but knew nothing." (*Id.*). Then in August 2019, Plaintiff received a termination letter from Target dated July 16, 2019, which had initially been sent to his upstate New York address. (*Id.*, p. 7). According to Plaintiff, he was terminated for failing to attend work on days that he was "not . . . scheduled to work, and on his day off." (*Id.*).

Plaintiff applied for unemployment benefits sometime before receiving his termination letter because Target had stopped paying him. (Dkt. No. 1, p. 7). After the termination, Plaintiff allegedly received a phone call from a Target employee, telling him to say that "he voluntarily quit his Target employment." (*Id.*). On October 30, 2019, Plaintiff filed a complaint against Target with the Equal Employment Opportunity Commission ("EEOC") advancing the same allegations he asserted in the in-house complaint he filed with Target, and also claiming that "Target unlawfully used the unemployment process through the [u]nemployment official, who continued to ask [him] to say that he voluntarily left Target" in order to "extort [Plaintiff] from pursing [his] earlier discrimination claim, so that [he] would continue to receive unemployment benefits." (*Id.*, p. 28). The Department of Labor ultimately upheld Plaintiff's unemployment benefits because he did not know why he was terminated when he applied for benefits because he had not yet received the termination letter. (*Id.*, p. 25). On November 29, 2019, Plaintiff received a right-to-sue letter from the EEOC. (*Id.*, pp. 29–30).

### III.   STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

Where, as here, the plaintiff proceeds *pro se*, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). However, this does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. 544, 555–56 (2007).

### IV.   DISCUSSION

In moving to dismiss, Defendants argue that: 1) Plaintiff did not allege claims against them pursuant to Section 1981 and Section 1983; 2) Plaintiff has failed to sufficiently allege that Target discriminated against him based upon his race; 3) Plaintiff has failed to sufficiently allege that Target retaliated against him for engaging in a protected activity; 4) Plaintiff has failed to sufficiently allege that he was subjected to a hostile work environment; and 5) Defendants

Fetcho and Doe cannot be held individually liable under Title VII, Section 1981, or Section 1983. (*See* Dkt. No. 28).

The Court will address each argument in turn.

**A. Section 1981/1983 Claims**

First, Defendants argue that Plaintiff "did not attempt to assert any Section 1981 or Section 1983 claims against Defendants," and that "the Court should not read such a cause of action into the Complaint." (Dkt. No. 28-1, p. 11).

Liberally construing the Complaint, the Court previously found that Plaintiff sufficiently stated a racial discrimination claim under Section 1981, based on his allegations that Target's Amsterdam distribution center engaged in a pattern of promoting white employees from the position of order picker within 45 days, while he and a Spanish employee remained in that position for significantly longer. (Dkt. No. 5, p. 19). The Court also found that Plaintiff stated a hostile work environment claim against Defendants pursuant to Section 1981 and/or Section 1983, based on allegations that they failed to take action to prevent wrongful acts against Plaintiff, despite his formal and informal complaints that his lunch was routinely stolen by white employees and that when he began keeping his lunch in his car, other employees targeted his car by scratching and denting it. (*Id.*, p. 20). To the extent Defendants ask for reconsideration of these findings, the Court will decline. Likewise, the Court rejects Defendants' argument that Plaintiff is not entitled to liberal construction of his Complaint, (Dkt. No. 28-1, p. 9), since that issue has already been decided. (*See generally* Dkt. No 5). In sum, Plaintiff may proceed on his claims via Section 1981, as originally recommended by Judge Hummel. The Court will discuss the Section 1983 claim below.

### B. Title VII Discrimination

Next, Defendants argue that Plaintiff has failed to state a Title VII claim against Target for discrimination based on race. (Dkt. No. 28-1, p. 11). The Court previously found that Plaintiff sufficiently stated such a claim based on his allegations that "he was passed up for promotions, made to do worse and additional work, and refused a valid transfer request based on his race." (Dkt. No. 5, p. 12).

In general, to state a prima facie case of discrimination under Title VII, a complaint must allege that: 1) the plaintiff belongs to a protected class; 2) he or she is qualified for the position at issue; 3) his or her employment was terminated, or she suffered some other form of adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).

Defendants argue that Plaintiff cannot establish the third and fourth elements of this claim: that Plaintiff suffered an adverse action, and that the adverse action occurred under circumstances giving rise to an inference of discrimination. (Dkt. No. 28-1, pp. 12–17). However, the Court has already recognized alleged facts which could rise to the level of an adverse action: being passed up for promotions, made to do worse and additional work, and being refused a valid transfer request. Any of these actions could, in theory, effect a materially adverse change in the terms and conditions of employment. Defendants' argument is better suited to summary judgment when the Court would have the necessary facts to evaluate the existence and impact of each action. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462 (2d Cir. 1997) ("[B]ecause there are no bright-line rules, the court must make case specific findings to determine whether the challenged employment action reaches the level of 'adverse.'").

8

As to discriminatory intent, a plaintiff has a minimal burden at the pleading stage, merely needing to allege facts suggesting an inference of discriminatory motivation, for example more favorable treatment of employees not in the protected group. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Here, Plaintiff alleges that, as a black employee, he did not receive equal work assignments or promotional opportunities despite being employed longer than white employees who regularly received promotions. (*See* Dkt. No. 1, at pp. 5–6). At this early stage, these allegations are sufficient to plausibly infer discriminatory intent. Accordingly, Plaintiff may proceed with his Title VII discrimination claim against Target.

### C. Title VII Retaliation

Defendants also argue that Plaintiff has failed to sufficiently allege facts satisfying the elements of a Title VII retaliation claim. (Dkt. No. 28-1, pp. 12–16). In order to plead a retaliation claim, a plaintiff must advance non-conclusory allegations that: 1) he engaged in a protected activity; 2) the defendants were aware of the activity; 3) the defendants took an adverse action against him; and 4) there is a causal connection between the protected activity and the adverse action. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014).

Here, the Court previously found that Plaintiff plausibly stated a Title VII retaliation claim based on his allegations that he was refused a transfer request and terminated (potential adverse actions) in retaliation for filing an in-house complaint concerning discrimination (protected activity). (Dkt. No. 5, pp. 12–13). Once again, the Court declines to revisit this finding. Defendants' argument must await development of the record and summary judgment. *See Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 594 (S.D.N.Y. 2017)

(recognizing that on a motion to dismiss a retaliation claim, the plaintiff need only allege a plausible causal connection between protected activity and adverse action).

### D. Hostile Work Environment

In addition, Defendants argue that Plaintiff has "failed to allege any facts establishing an abusive working environment based upon a protected class." (Dkt. No. 28-1, p. 23). To plead a hostile work environment claim under Title VII, Section 1981, or Section 1983, a plaintiff must allege that he is a member of a protected class and that he was subjected to hostility due to his membership in that protected class. *Littlejohn*, 795 F.3d at 320–21.

Here, the Court found that Plaintiff sufficiently stated a hostile work environment claim against Defendants Target, Fetcho, and Doe, based on his allegations that they failed to take action to prevent wrongful acts against Plaintiff, a black employee, despite his formal and informal complaints that his lunch was routinely stolen by white employees and that when he began keeping his lunch in his car, other employees targeted his car by scratching and denting it. (Dkt. No. 5, p. 20). Although Defendant argues that this alleged treatment does not rise to the level of creating a hostile work environment, (Dkt. No. 28-1, p. 17), the Second Circuit has cautioned against "setting the bar too high" at the motion to dismiss stage. *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). "While a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse.*" *Id.* (internal citation omitted). Thus, the Court declines to revisit the finding that Plaintiff has sufficiently alleged a hostile work environment based on race. *See also Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) (explaining that "whether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry").

**E. Individual Liability**

Finally, Defendants argue that Plaintiff's claims against Fetcho and Doe should be dismissed. (Dkt. No. 28-1, p. 24). The Court previously found that Plaintiff sufficiently alleged a hostile work environment claim against Fetcho and Doe pursuant to Section 1981 and/or Section 1983. (Dkt. No. 5, p. 20). The Court noted that individuals are not subject to liability under Title VII. (*Id.*, p. 11). To the extent Defendants argue that Plaintiff's allegations do not demonstrate the personal involvement of Fetcho and Doe in a hostile work environment, the Court is not convinced. As discussed above, Plaintiff alleges that Fetcho and Doe failed to address harassment directed at him by white employees. (Dkt. No. 1, pp. 3–4). At this stage, that is enough, albeit barely, to keep them in the case. Further, Defendants argue that Plaintiff's claims against Doe should be dismissed because Plaintiff has not completed service on him. (Dkt. No. 28-1, p. 24 n. 2). However, it is hard to see how Plaintiff could serve Doe without first identifying him—which he could do in discovery. *See Warren v. Goord*, 476 F. Supp. 2d 407, 413–14 (S.D.N.Y. 2007) ("the Court will not dismiss the claim against John Doe until plaintiff has had sufficient discovery to name the defendant").

The Court will also take this opportunity to clarify that Plaintiff's hostile work environment claim against Fetcho and Doe can only be maintained pursuant to Section 1981 because there is no allegation or indication that these Defendant were "state actors," as opposed to employees of a private company, Target. To the extent Plaintiff alleges a Section 1983 claim against Fetcho and Doe, it will be dismissed. *See Gonzalez v. L'Oreal USA, Inc.*, 489 F. Supp. 2d 181, 186 (N.D.N.Y. 2007) (dismissing Section 1983 claim against private company where there was no allegation that company acted "under color of state law").

11

### V. SUMMARY

Plaintiff's remaining claims are as follows: 1) Title VII discrimination claim against Target; 2) Title VII retaliation claim against Target; 3) Section 1981 race discrimination claim against Target; 4) Title VII hostile work environment claim against Target; and 5) Section 1981 hostile work environment claim against Fetcho and Doe.  The Court notes that these claims were identified and found to be sufficiently stated as part of Judge Hummel's review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), which was adopted by Judge Suddaby almost a year ago on July 20, 2020.  To the extent Defendants disagreed with that decision, they could have objected or sought reconsideration.  To seek dismissal now for failure to state a claim when the Court has already closely scrutinized Plaintiff's claims using the same standard is a waste of resources for everyone involved.  *See Preston v. New York*, 223 F. Supp. 2d 452, 462 (S.D.N.Y. 2002) (recognizing that courts employ the same standard to analyze "failure to state a claim" under 28 U.S.C. § 1915 and Rule 12(b)(6)).

### VI. CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' Motion to Dismiss (Dkt. No. 28) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiff's Section 1983 claim against Defendants Fetcho and Doe is **DISMISSED with prejudice**; and it is further

**ORDERED t**hat Defendants' Motion is **otherwise DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

July 22, 2021
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge